Good morning, your honor. Sue Ellen Staten was a case that she was involved with manufacturing possibly 1 gram of methamphetamine. They charged her with manufacture of methamphetamine. She pled guilty to the charge, which would have been 10 to 16 months on the guideline. When the probation officer took it over, they raised it to double the sentence because they claimed that it was a substantial risk of harm to human life because they were doing their little cooking operation in a motel room. Substantial risk of harm to human life has not been defined that I could find anywhere, except I did find one in a motel room. And I didn't cite that case, but they have a jury instruction that says that to process manufacturing methamphetamine or mixing chemicals, the court's instruction limited the risk to one that was real and significantly large. In this case, the district judge did not use the clear and convincing standard of evidence, which is the Ninth Circuit case, U.S. v. Jordan. In fact, the judge didn't state what standard he used. He let us each put experts in and reviewed theirs, and his conclusion was that at least the cook was at risk. Did the district court – there's an application now that specifically says what factors are supposed to be considered. Did the district judge consider those factors? He did not, and that's in my brief in detail. I've listed the factors. He did not refer to those factors at all, and that's one of the things I pointed out in my brief. He finally concluded by saying that it was – it must be dangerous because it was in a hotel room, even though the government's experts said that there was some people in one of the rooms at one time or another. There was nothing said about whether that was in the room at that time, I mean, that they were actually in the room. But most importantly, they didn't say that any of these chemical, so-called chemicals, were transmitted from one room to another. This was really a simple process. The application notes require that he shall include the quantity of any chemicals. Was there a discussion by the experts or a finding with regard to the quantity of chemicals? He did not do that to my knowledge. He did talk some about the likelihood of release into the environment. The district court did, which is the next factor. Yes. Did he talk at all about the duration of the offense or the extent of the manufacturing operation? He did not, to my knowledge. And he did talk some about the location of the laboratory? He did. So he may have discussed some of the factors but not others? Yes, that would be true. But what he said then, it didn't show that it went into any other rooms. There was nothing to show that there was chemicals released into the environment, either by air or by water, when they only found two closed containers like coal and fuel and some acetone. Was there a dispute in the evidence about whether they were open or closed containers? There is a dispute in the evidence because the government's experts said they were, one of them was open, but our expert looked at all the evidence and he concluded that there was three closed containers. Did the district court resolve that contradiction? Did he make a finding as to whether they were open or closed? He didn't mention it. What's the status of, legally, of the rule we established in Jordan requiring, I think, of facts that would have a, of points to be determined that would have a disproportionate impact on a sentence? What's the status of that rule after Booker, after the Supreme Court's Booker decision? As far as my research has revealed, it's still there and it's still good law. In fact, I had another case later on that he did apply that standard, but did not in this one. A reported case? Declaring convincing standard. You mean in district court? District court. I see. Does the government agree that the enhancement, the determination of dangerousness of the meth lab has a disproportionate impact on the sentence? They did. In fact, I think they put that in their brief and referred to Jordan because this doubled her sentence. Her sentence started out 10 to 16 months. She ended up with 63 months, which was the low end of the guideline, with that enhancement. Okay. Well, if you'd like to reserve some time for a total argument, you certainly may. Thank you. Good morning. For the record, my name is Joe Thagard. I'm an assistant United States attorney from Great Falls, Montana. I prosecuted this case. I will concede that the outlet said that for the purpose of calculating the advisory guideline, that from what I can tell, Jordan remains good law. And there would have to be proof by clear and convincing evidence, at least for the calculation of the advisory guideline, in order to implement the increase which the court found here. Is there any indication that district court did that here? The record is silent as to what standard the court employed in this instance, Your Honor. It's the government's position that reviewing the evidence in this matter, that the standard is met. In particular, while Judge Haddon did make reference to the fact that the person who actually might be conducting the cook or the manufacturer would be placed at risk, he also did make a finding that future occupants of the room could be placed at risk. There are four factors he's supposed to consider, specifically shall consider. Yes, Your Honor. He has to have considered some of them but not others. That would be correct. So why isn't that in the clear and convincing problem sufficient for us to say we just have to remand it and have him do it again? Well, Your Honor, it certainly is a problem. And I don't seek to minimize that. What I would suggest is that I think that on the record that this Court may be able to determine whether or not those facts are present and whether or not they're present to a clear and convincing evidence standard. And that would certainly be our position, that that would be the appropriate step to take at this point. But that's not what we usually do when a district judge either – because in the end, especially after Booker, if he does do it right, then we are going to review that it resolved in a fairly deferential fashion. But first we have to see that he did it right. So if he didn't do it right, I don't know that we have a choice but to send it back and say do it right. And I understand the Court's concern with that respect. And I think that that also raises the issue of how the advisory guideline interplays with what's a reasonable sentence. Because, of course, the advisory guidelines are now just that, they're advisory. And so the Court also was in a position, the district court, where it had to impose a reasonable sentence. Well, if he had said – I've been thinking about this recently. It's very interesting. If he had said, look, I'm not going to go through the four factors that the guidelines suggest because it's my conclusion that, given everything I know about this case, that some of the factors A and B really are going to be relevant to my consideration, so I'm not going to do it. If he didn't do that – and then we could review that determination as to whether or not that he's entitled to do that or whether he first has to run through the calculation and then apply any other determination afterwards. But he didn't even do that. I mean, he just didn't recognize that he wasn't going through the exercise. And it certainly would have put this Court in a much, much better position, I think, if he had made such a statement that, in fact, he wasn't going to consider those factors or that they weren't relevant to the reasonableness of the sentence. There's also the fact that there does seem to be a factual contradiction here which could map, which is whether these chemicals were enclosed or open containers. And without resolving that fact, it seems hard for him to have determined anything very reliably. The one thing I would point out to the Court with respect to that is that the individual who actually testified before the Court was a deputy sheriff named Jeff Juergens who's trained in dismantling these sort of laboratories and processing them. He was actually present in the motel room. And he testified that he did see an open container of iodine and an open coal and fuel container. Ms. Lord's expert was not present in the courtroom or at the laboratory site. My understanding is that essentially he relied on photographs and police reports. And, of course, so the courts could have said that and could have said, so I therefore choose to believe the guy who was there over the guy who wasn't. But he didn't say that. And I recognize that he did not say that, Your Honor. Could a district court in sentencing under Booker say that, I recognize this four-factor test in the guidelines about dangerousness to health, but as far as I'm concerned, all meth labs are dangerous to health. Could a district court say that? I think that it could in reasonableness determination, Your Honor. Now, if he had done that expressly, we could review that. You know, if he said I'm not going to follow a four-factor test, I think all meth labs pose a danger at least to the cookers, maybe to other people in a motel. That's enough for me. I think that if he had done that, we could assess reasonableness under the 3553 factors. But he really didn't do that. He didn't say that. And that's correct. And I would agree with you, Judge Gould, that if he had made such a finding, that he could proceed to the reasonableness. I would suggest, and Booker at least certainly requires that the court make a guideline calculation. First. Yes. And the statute made two. I mean, the statute, I mean, hopefully Booker was following the statute, but there is a sentence in the statute which I'm probably not going to find now which seems to suggest that as a matter of procedure, they first have to find the guidelines. I don't know. I'm somewhat dubious about whether that's true in every instance, but in any event, it would appear to be true in this instance. And I think that it would. If a court – this may be beyond the scope of just your case alone. We've seen this in a lot of cases. The dust isn't going to settle for a while on the post-Booker standards, so we may as well hear what you think on this. If a judge makes a mistake in calculating that guideline range, if they make a mistake under our prior precedent, should we in all cases be sending it back to the judge to say, get the guideline range right first, then exercise your discretion under Booker? Or can we look at the purposes in 3553 and say, well, the judge made a mistake in the guideline calculation, but the overall sentence is reasonable anyway? And I would – I know there's some other circuits that have talked about that. Judge, I would suggest that the latter course is something that makes sense, although I've suggested that normally a correct guideline calculation should be made. I think that there are cases in which clearly the reasonableness of the sentence is really beyond dispute, even though there may be a miscalculation of the guideline calculation. And in that sort of a case, I don't think that it makes really good sense from an administration of justice standpoint to remand. I'm now looking at 3553, and it's actually kind of interesting, because with respect to the guidelines, it says the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of a defendant as set forth in the guidelines issued by the sentencing provision. And that sort of suggests that a sort of gross guideline determination may be adequate. It doesn't talk about applying enhancements or anything. It just says the categories. So if one went by the statute alone, one might think that some more general consideration of the guidelines, rather than doing an actual calculation for each person, might be adequate. I don't know if anybody has suggested that or thought about it. Yeah. And I would agree, you know, certainly this was a case where we were talking about a fairly fine point of the guideline, although, as it turned out, it was extremely serious from the sentencing guideline calculation. It's difficult to say how precise the court has to be in that calculation. And that's why, in response to Judge Gould's question, I was saying that I think that there may be circumstances where, despite the fact that there may have been some sort of an error in a fine guideline that really it's clear that the sentence is reasonable under the circumstances and there would really be no purpose for a remand. It's a little troubling if the district court didn't even acknowledge the significance of Jordan and address, you know, address that principle that there's some extra care that needs to go into making a decision that has a disproportionate impact. And frankly, Your Honor, I'm a little bit surprised that there wasn't an acknowledgment of the standard in this instance. And perhaps I should acknowledge responsibility for that. Perhaps I should have called that to the court's attention. I do know I'm in front of this particular judge on a daily basis. He routinely acknowledges what his burden of proof is for finding facts. Great. Thank you, Your Honor. Unless there are any other questions, I'll resume. No interesting issues. Thanks for making the trip here for both of you. All right, rebuttal argument, please. Just a couple things. This wasn't a reasonable sentence. This woman carried a microwave oven in here. That was her role in this whole offense. She ended up with more time than the other people did. And part of that was because she did have some criminal history, of course. She did have a DUI and some minor stuff. But the evidence simply didn't support this enhancement. And I also write, because I may have the wrong case, that the quantity of methamphetamine here was extremely small. My expert said they couldn't have gotten more than a gram out of what they were doing and the method that they were doing. And this was a one-time thing. It wasn't an ongoing thing. It was one time. The probation office who came up with the enhancement reviewed the same evidence that my expert did and came up with this enhancement. When the expert looked at it, he found that there wasn't any of these big dangers that usually, although all meth labs are dangerous, there's no question about that. But I think they vary. Some of them don't pose a substantial risk of harm to human life. That's a high standard. Court has no further questions. Well, I guess I would ask you the same question that I asked your colleague in the government. Putting your case aside, I know you can't as an advocate totally, but since we do have this issue in a lot of cases and it's not yet settled in the Ninth Circuit, what should the general approach be if there's an error in calculating the guidelines now that we have Booker? Should we always require that the sentencing judge have the sentencing again for resentencing to get the guidelines range set first and then exercise discretion under Booker? Or can we go right to the question of whether the sentence is reasonable under the Section 3553 factors and kind of find a harmless mistake in the guidelines calculation? Well, I would think that the advisory guideline would have to be accurate if it's going to be an advisory guideline. So I think that would be the way to go on that. Thank you. All right. Judge Schwartz, Judge Prejean have a question? Thank you both. It's a real pleasure to have Montana Council travel to our court to have the argument. We appreciate your being here. Thank you. U.S. versus Staten will be submitted.
judges: Gould, Berzon, Schwarzer